UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**KANDICE DEQUEANT**                                         CASE NO. 6:24-CV-00978

**VERSUS**                                                             JUDGE ROBERT R. SUMMERHAYS

**SCHOOL SYSTEM OF LAFAYETTE PARISH      MAGISTRATE JUDGE CAROL B.
ET AL**                                                                          WHITEHURST

MEMORANDUM RULING

The present matter before the Court is the Motion for Summary Judgement [ECF No. 14] filed by defendant City of Youngsville. Plaintiffs Kandice and Noah Dequeant oppose the motion. [ECF No. 16]. After considering the Motion, the summary judgment record, and the relevant authorities, the Court rules as follows.

## I.
### BACKGROUND

Kandace Dequeant alleges that she and her son, Noah, suffered "extreme emotional distress, humiliation and embarrassment" as a result of the actions of the Lafayette Parish School Board, Southside High School employees, and City of Youngsville police officers assigned as School Resource Officers at Southside High School. The relevant facts are largely undisputed. Noah was a 17-year-old student at Southside High School at the beginning of the 2023-24 school term and was enrolled in the school's special education program. It is undisputed that Noah is severely autistic and that, according to Kandace Dequeant, he functions at "around an 18 month old mental capacity."[1]

---
[1] ECF No. 4 at 4.

Plaintiffs' claims center on events occurring on August 17, 2023, September 13, 2023, and October 2, 2023. At the close of the school day on August 17th, Noah was loaded onto his assigned bus. According to the summary judgment record, Noah began "throwing his backpack, throwing his lunchbox and hollering."[2] Noah refused to sit in his assigned seat—which violated the School System's policy that all bus riders be seated—and began "forcefully striking the window of the bus."[3] According to the City of Youngsville, Noah's "outburst upset the other students [on the bus] two of whom were prone to have seizures."[4] School administrators therefore removed the other students from the bus. Two Youngsville police officers—Kelly Dauphine and Lovenia Landry boarded the bus to talk to Noah. According to the City of Youngsville, Noah was kept on the bus for his own safety while school administrators attempted to contact his mother, Kandice.[5] Officer Dauphine stood at the front exit of the bus to prevent Noah from leaving. Kandice Dequeant alleges that Noah was kept on the bus "for approximately 1 ½ hours with outside temperatures at 100 plus degrees Fahrenheit and an excessive heat warning in place."[6] The City of Youngsville responds that the school bus's engine was running and the air conditioner was operating the entire time Noah was on the bus and that he was provided with water.[7] Plaintiffs do not appear to dispute this evidence. The City also contends that Noah was held on the bus because school officials had difficulty contacting Kandice and arranging for her to pick up Noah, or to provide an authorization for Noah's caregiver to pick him up—"Numerous attempts were made by both school personnel and officers with the Youngsville Police Department to contact [Kandice Dequeant]."[8]

---

[2] ECF No. 14-1 at 5 (citing Deposition of Angelina Kilchrist, ECF 14-5 at 19).
[3] *Id.* (citing Kilchrist Deposition, ECF 14-5 at 20).
[4] *Id.* (citing Kilchrist Deposition, ECF 14-5 at 21).
[5] ECF No. 14-1 at 6, 11.
[6] ECF No. 4 at 7.
[7] ECF No. 14-1 at 6 (citing Kilchrist Deposition, ECF 14-5 at 28, 48).
[8] ECF No. 14-1 at 7.

On September 13th, Noah and other students were allowed to view goats and other livestock maintained at the school.[9] The summary judgment record reflects that Noah damaged a nearby vehicle by throwing rocks and pieces of metal during the activity.[10] Youngsville police officers Dauphine and Lucas Alexander were school resource officers assigned to Southside at this time, and both were summoned when Noah damaged the vehicle. After Dauphine and Alexander arrived, Dauphine witnessed Noah throw a rock that struck a teacher in the face.[11] Dauphine then placed Noah in handcuffs "for approximately two to three minutes" to prevent further damage to property or injury to school personnel.[12] According to the City, once Noah was placed in handcuffs, he became compliant and the restraints were removed.[13]

On October 2nd, Dauphine and Alexander were summoned to Noah's classroom because he was "intermittently striking blows to a window within a classroom."[14] After their arrival, Noah spat on them, hit Dauphine in the face, and attempted to strike Alexander.[15] Alexander placed Noah in handcuffs and sat him on the floor. According to the City, Noah was compliant after being placed in handcuffs.[16]

Unfortunately, the procedural posture of the case is convoluted and, as a result, discerning which claims are still "live" as well as the nature of those claims (i.e. whether federal or state) has been difficult. Kandice and Noah Dequeant commenced this case in the 15th Judicial District Court (JDC), Lafayette Parish, Louisiana, on August 31, 2023, as "*Kandice Dequeant, individually and on behalf of their minor child, Noah Dequeant v. Lafayette Parish School Board, et al.*," Docket

---

[9] *Id.* at 8 (citing Deposition of Lucas Alexander, ECF No. 14-9 at 19-21).
[10] *Id.* (citing Deposition of Kelly Dauphine, ECF No. 14-8 at 18-19).
[11] *Id.* (citing Dauphine Deposition, ECF No. 14-8 at 19).
[12] *Id.* (citing Dauphine Deposition, ECF No. 14-8 at 19-20).
[13] *Id.*
[14] *Id.* (citing Dauphine Deposition, ECF No. 14-8 at 22).
[15] *Id.* (citing Dauphine Deposition, ECF No. 14-8 at 22; Alexander Deposition, ECF 14-9 at 28-30).
[16] *Id.*

Number 2023-4879, Section L. Plaintiffs named as defendants the Lafayette Parish School System and the City of Youngsville. Plaintiffs did not name any School System employee or City of Youngsville police officer as individual defendants. Plaintiffs' original state court petition asserted two claims: (1) a state law claim of intentional infliction of emotional distress against the School System only, and (2) a federal civil rights claim under 42 U.S.C. § 1983 against the City of Youngsville.[17] The City of Youngsville then removed the case to federal court based on the Section 1983 claim.[18] After removal, Plaintiffs filed a motion to dismiss all of their federal claims without prejudice and filed an "Amended Petition" that recast their civil rights claims to only assert claims under the Louisiana Constitution and state law. Accordingly, the Court remanded the case to state court on October 31, 2023.[19]

This case is now back in federal court. The parties engaged in motion practice in state court, during which Plaintiffs filed a Second Supplemental and Amending Petition, a Third Supplemental and Amending Petition, and a Fourth Supplemental and Amending Petition. The Second Supplemental and Amending Petition apparently added a claim against the School System for malicious prosecution, and this claim was the subject of a motions practice in state court.[20] The state court granted a Peremptory Exception to the malicious prosecution claim and Plaintiffs filed a Third Supplemental and Amending Petition restating the claim.[21] Plaintiffs' Fourth Supplemental and Amending Petition added two additional claims: (1) a claim for "negligent hiring, retention and failure to supervise by the [School System];" and (2) a claim for "negligent hiring, retention and failure to supervise by the [City of Youngsville]."[22] This new claim against the City of

---

[17] ECF No. 4 at 8.
[18] *Dequeant v. Lafayette Parish School System, et al.*, 23-cv-01277 (W.D. La. Sept. 14, 2023).
[19] *Id.*, ECF No. 12.
[20] 24-cv-978, ECF No. 4 at 208.
[21] *Id.*, ECF No. 4 at 163.
[22] *Id.*, ECF No. 1-2 at 2-3.

4

Youngsville states that the actions by Alexander and Dauphine in handcuffing Noah "violated both federal and state law" and that "[a]t a minimum, [Alexander and Dauphine] violated the Americans with Disabilities Act ["ADA"] and Plaintiffs [sic] right to be free from cruel and unusual punishment."[23] In light of the reference to federal law in this new claim, the City of Youngsville removed the case again and filed the present Motion for Summary Judgment.[24] In response to this Motion, Plaintiffs state that they are not asserting federal civil rights claims against the City of Youngsville—"Noah has previously dismissed his Section 1983 claims against [the City of Youngsville], and has not renewed those claims…."[25] Rather, the federal claims referenced in the Fourth Supplemental and Amending Petition are solely ADA claims, not Fourth Amendment or Eighth Amendment claims.

## II.
## THE SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[26] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[28] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating

---

[23] *Id.*, ECF No. 4 at 312.
[24] *Id.*, ECF Nos. 1, 14.
[25] *Id.*, ECF No. 16 at 3.
[26] Fed. R. Civ. P. 56(a).
[27] *Id.*
[28] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).

by competent summary judgment proof that there is an issue of material fact warranting trial.[29]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[30] "Credibility determinations are not part of the summary judgment analysis."[31] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[32] Under Rule 56(f), a court may "[a]fter giving notice and a reasonable time to respond … (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

### III.
### DISCUSSION

**A. Americans with Disabilities Act Claims.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[33] Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal

---

[29] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[30] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[31] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[32] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[33] 42 U.S.C. § 12132.

funding and provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[34] To state a claim under Title II of the ADA or § 504 of the Rehabilitation Act, a plaintiff must allege that (1) "he is a qualified individual"; (2) "he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity"; and (3) this "exclusion, denial of benefits, or discrimination is by reason of his disability."[35] These two claims differ with respect to the final element. Under § 504 of the Rehabilitation Act, the disability must be the sole cause of the exclusion.[36] Title II "more broadly probits 'exclusion by reason' of [a] disability."[37] Under the ADA and Rehabilitation Act, a "public entity is liable for the vicarious acts of any of its employees."[38]

The summary judgment record in this case supports Plaintiffs' claim that Noah is severely autistic and functions at "around an 18 month old mental capacity."[39] He is thus disabled within the meaning of the ADA. However, Plaintiffs must further show that Noah was excluded from participation in, or was denied the benefits of, services, programs, or activities for which the Lafayette Parish School System is responsible, *and* that this exclusion, denial of benefits, or discrimination is *by reason of his disability*.[40] The Fifth Circuit's opinion in *J.W. v. Paley* is

---

[34] 29 U.S.C. § 794(a).
[35] *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004) (citing *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997)).
[36] *Maples v. Univ. of Tex. Med. Branch at Galveston*, 901 F. Supp. 2d 874, 879 (S.D. Tex. 2012).
[37] *Id.*
[38] *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574–75 (5th Cir. 2002).
[39] ECF No. 4 at 4.
[40] *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004) (citing *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997)).

illustrative.[41] In that case, a school resource officer used a taser against a special needs student to prevent the student from exiting the school building.[42] The Circuit affirmed the District Court's dismissal of the plaintiffs' ADA claim. According to the court:

> It is this "intentional discrimination" requirement that dooms Plaintiffs' claims under either a disparate treatment or failure-to-accommodate theory. While Officer Paley may have used poor judgment when he tased Jevon, Plaintiffs have failed to create a genuine dispute on the issue of whether Officer Paley intentionally discriminated against Jevon by reason of his disability.
>
> . . .
>
> [B]ased on the summary judgment evidence, it was not indifference or hostility toward Jevon's disability that motivated Officer Paley when he tased Jevon, but a desire to keep Jevon safe inside the school because of the vulnerabilities caused by his disability. To show why this subtle distinction matters, consider a hypothetical non-disabled student behaving similarly to Jevon who was similarly considered, for whatever reason, unsafe to leave the school. Plaintiffs have failed to produce evidence that Officer Paley would not have tased such a *non-disabled* student.[43]

Here, the City points to evidence in the record that the City of Youngsville officers involved in the August 17th, September 13th, and October 2nd incidents were not motivated by hostility toward Noah's disability but a desire to ensure the safety of Noah and other students in light of Noah's violent outbursts. There is nothing in the summary judgment record indicating that the officers' reaction to Noah's violent outbursts would have been any different if these outbursts had come from a non-disabled student. With respect to the August 17th bus incident, the record also shows that the officers and school personnel wanted to ensure that Noah was released to an authorized caregiver. Again, nothing in the record indicates that these actions with respect to Noah were any different from the actions these defendants would have taken with respect to a non-disabled student.

---

[41] 81 F.4th 440 (5th Cir. 2023).
[42] *Id.* at 445-46.
[43] *Id.* at 450-51.

Accordingly, the Court grants the City's Motion for Summary Judgment with respect to Plaintiffs' ADA claims. These claims are dismissed.

### B. Other Federal Claims.

Plaintiffs' amended pleadings make a number of references to federal law, including alleging that "[b]y handcuffing [Noah], on at least two separate occasions in Southside High School, SRO Kelly Dauphine and SRO Alexander violated both federal and state law" and that their actions deprived Plaintiffs of their "right to be free of cruel and unusual punishment."[44] In response to the Motion for Summary Judgment, Plaintiffs contend that they are not challenging the handcuffing or Noah's detention under the Fourth Amendment of the U.S. Constitution but are instead asserting only state law claims.[45] The generic reference to "federal law" appears to relate solely to Plaintiffs' ADA claim. Moreover, Plaintiffs previously dismissed their federal Fourth Amendment claims when the Court remanded the case on its first trip back to state court. Accordingly, to the extent that any of Plaintiffs' recent allegations can be construed as asserting Fourth Amendment claims, those claims are dismissed with prejudice.

Finally, Plaintiffs do not address the allegations referencing their right to be free of "cruel and unusual punishment." The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[46] The Eight Amendment generally applies to convicted prisoners and both the Fifth Circuit and the Supreme Court have held that this amendment is inapplicable to cases of school discipline outside the prison

---

[44] ECF No. 1-2 at 2-3.
[45] ECF No. 16 at 3.
[46] U.S. Const. amend. VIII.

context.[47] Accordingly, to the extent that Plaintiffs' allegations can be construed as an Eighth Amendment challenge, their claims are dismissed with prejudice.

### C. Negligent Hiring, Retention and Failure to Supervise Claims.

Plaintiffs' negligent hiring, retention and failure to supervise claims implicate Louisiana's discretionary immunity statute.[48] La. Rev. Stat. § 9:2798.1(B) provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." This provision does not apply "(1) [t]o acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or (2) [t]o acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."[49] In *Roberts v. City of Shreveport*, the Fifth Circuit explained that

> Louisiana courts have adopted a test analogous to the FTCA discretionary function test in determining whether an official is protected by the statute, namely, (1) whether a state law, regulation, or policy specifically prescribes the officer's course of action; and (2) whether the challenged action is grounded in political, economic, or social policy.[50]

Applying this discretionary function test, state and federal courts have held that Louisiana's discretionary immunity statute immunizes officers from state-law negligent training, hiring, supervision, and retention claims.[51] Accordingly, the Court grants the City of Youngsville's Motion

---

[47] *Ingraham v. Wright*, 430 U.S. 651, 664 (1977); *Fee v. Herndon*, 900 F.2d 804, 810 (5th Cir. 1990) (noting that "the *Ingraham* Court has expressly rejected the application of the eighth amendment to student punishment....") (citing *Ingraham*, 430 U.S. at 664).
[48] *Roberts v. City of Shreveport*, 397 F.3d 287, 298 (5th Cir. 2005).
[49] La. Rev. Stat. 9:2798.1(C).
[50] *Roberts*, 397 F.3d 287 at 298.
[51] *See id.* (La. Rev. Stat. 9:2798.1(B) renders police chief immune from state-law claims premised on his "training officers under his command"); *Smith v. Lafayette Parish Sheriff's Dep't*, 874 So. 2d 863, 868 (La. App. 3 Cir. 2004) (sheriff's "hiring/retention policy was a discretionary act" for purposes of immunity under La. Rev. Stat. 9:2798.1);

for Summary Judgment with respect to these claims. These claims are dismissed with respect to the City.

### D. False Arrest and Imprisonment Claims.

Finally, Plaintiffs appear to assert state law claims for false arrest and imprisonment based on the August 17, 2023 bus detention, and the incidents on September 13, 2023, and October 2, 2023 when Noah was handcuffed. The Louisiana tort of false arrest and imprisonment occurs when one arrests and restrains another against his will without a warrant or other statutory authority.[52] The two essential elements are: (1) detention of a person; and (2) the *unlawfulness* of such detention.[53] Here, Plaintiffs have not come forward with evidence creating a triable issue that the conduct of the Youngsville police officers involved in these incidents was unlawful.

First, with respect to the bus detention, the summary judgment record shows that Noah's conduct—failing to remain seated and striking the bus window—supports the concern of the school resource officers that Noah presented a danger to himself if allowed to leave the bus without supervision. The officers detained Noah on the bus only for the period of time required to contact a responsible adult to assume responsibility for Noah's safety. As far as maintaining a safe environment, the summary judgment record shows that the bus was air conditioned during the time period Noah was on the bus. Plaintiffs do not point to evidence refuting this. In sum, the summary judgment record does not reveal a triable issue as to the unlawfulness of the bus detention.

---

*Hoffpauir v. Columbia Cas. Co.*, No. 12-403, 2013 WL 5934699, at *12 (M.D. La. Nov. 5, 2013) ("[T]he hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function."); *Skinner v. Ard*, 519 F. Supp. 3d 301, 321 (M.D. La. 2021) (sheriff's "duties to train, supervise, and hire are not prescribed by law or regulation, and these duties are grounded in policy considerations").
[52] *Kyle v. City of New Orleans*, 353 So.2d 969 (La. 1977); *Harrison v. Phillips*, 539 So.2d 911 (La. App. 4th Cir. 1989), writ denied, 541 So.2d 894 (La. 1989).
[53] *Touchton v. Kroger Company*, 512 So.2d 520 (La. App. 3rd Cir.1987); *O'Conner v. Hammond Police Dept.*, 439 So.2d 558 (La. App. 1st Cir.1983).

Second, with respect to the handcuffing incidents on September 13, 2023 and October 2, 2023, the summary judgment record shows that Noah was handcuffed only after exhibiting behavior that endangered his safety and the safety of others. Specifically, during the September 13th incident, Noah threw a rock that struck a teacher. During the October 2nd incident, Noah struck Officer Dauphine. During both incidents, Noah was handcuffed only for the time period required for him to become compliant. Accordingly, Plaintiffs have not come forward with any evidence creating a triable issue with respect to the unlawfulness of Noah's detention

The Court therefore grants the City's Motion for Summary Judgment with respect to Plaintiffs' false arrest and imprisonment claims under Louisiana law.

## IV.
### CONCLUSION

For the reasons stated above, the Court GRANTS Motion for Summary Judgment [ECF No. 14]. Plaintiffs' claims against the City of Youngsville are dismissed with prejudice.[54]

THUS DONE in Chambers on this 2nd day of September, 2025.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[54] The Court notes that the dismissal of the federal claims against the City would ordinarily require the Court to consider a discretionary remand of the remaining state law claims, including the state law claims against the City, under 28 U.S.C. § 1367(c)(3). However, Plaintiffs' latest pleading references generic, unidentified "state and federal" claims against the Lafayette Parish School Board. Accordingly, it appears there may be federal claims remaining.